UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MY LEFT FOOT CHILDREN'S THERAPY, LLC, JON GOTTLIEB, ANN MARIE GOTTLIEB,<br><br>　　　　　　　Plaintiffs,<br>　v.<br><br>CERTAIN UNDERWRITER'S AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. HAH15-0632,<br><br>　　　　　　　Defendant. | Case No. 2:15-cv-01746-MMD-GWF<br><br>ORDER<br><br>(Defendant's Motion for Summary Judgment – ECF No. 26; Plaintiff's Motion for Partial Summary Judgment – ECF No. 29) |

### I. SUMMARY

This dispute relates to coverage for a qui tam action under a professional liability insurance policy and its relevant endorsements. Defendant Certain Underwriter's at Lloyd's London Subscribing to Policy No. HAH15-0632 ("Underwriters" or "Defendant") has filed a Motion for Summary Judgment ("Defendant's Motion"). (ECF No. 26.) Plaintiffs My Left Foot Children's Therapy, LLC's ("My Left Foot") and Jon and Ann Marie Gottlieb (collectively "Plaintiffs") have filed a Motion for Partial Summary Judgment ("Plaintiffs' Motion"). (ECF No. 29.) The Court has reviewed the parties' respective responses (ECF Nos. 37, 38) and replies (ECF Nos. 39, 40). The Court has also considered the arguments presented at the September 13, 2016, hearing on the parties'

Motions. For the reasons discussed below, Defendant's Motion (ECF No. 26) is denied in part and granted in part and Plaintiffs' Motion (ECF No. 29) is denied.

## II.  BACKGROUND

### A.  The Insurance Policy

Plaintiffs maintained a Professional Liability Insurance Policy ("Policy") with Underwriters for the coverage period of April 15, 2015, through April 15, 2016. (ECF No. 1 at 2.) The Policy includes a Retroactive Date of Coverage of April 15, 2014. (ECF No. 30-9 at 5.) The Policy is a "claims made" policy, meaning that the Policy provides professional liability coverage to Plaintiffs for covered claims made and reported to Underwriters during the policy period. (ECF No. 26 at 8.) Section I.B. of the Policy provides that Underwriters has the duty to defend Plaintiffs against any "Claim" or "Suit" brought against them arising from a professional liability act covered by the Policy and must do so up to the "Limit of Liability." (ECF No. 30-9 at 7.) The Limit of Liability identified in the Declarations of the Policy is $2,000,000 per claim and $4,000,000 in the aggregate, subject to a $2,500 deductible. (*Id.* at 5.) Coverage extends to any act, error or omission in the rendering of or failure to render professional services. (*Id.* at 17.) Section I.A. of the Policy provides coverage for "those sums in excess of the deductible . . . that an Insured becomes legally obligated to pay as **Damages** and **Claim Expenses** which the Insured shall become legally obligated to pay because of any **Claim** or **Claims**." (*Id.* at 7 (emphasis in original).) Section V.B. defines "Claims Expenses" as "fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim**, suit or proceeding arising in connection therewith, if incurred by the Underwriters or by the **Insured**…" (*Id.* at 11 (emphasis in original).)

Plaintiffs purchased additional endorsements, including a Billing Errors Endorsement and a Claims Expenses Endorsement, to provide supplemental coverage in addition to what was covered under the Policy. (ECF No. 1 at 18.)

///

///

### B.  The Qui Tam Action

On June 30, 2015, Plaintiffs received notice of a qui tam action filed against them in the District of Nevada ("Qui Tam Action").[1] (ECF No. 1 at 2.) The case had been filed under seal on October 28, 2014. (*Id.* at 7.) The Qui Tam Action is based on allegations that Plaintiffs provided medically unnecessary therapy services in violation of federal and state false claims acts. (*Id.* at 2.) Plaintiffs timely notified Underwriters of the lawsuit on July 14, 2015. (*Id.* at 7.) Underwriters extended $25,000 of coverage[2] for any expenses that Plaintiffs incurred in defending and resolving the Qui Tam Action. (*Id.* at 8.)

### C.  Coverage Dispute

The Complaint asserts three claims for declaratory relief, seeking a declaration that Underwriters has a duty to indemnify for Claim Expenses (Count I), a duty to defend (Count II), and a duty to indemnify for damages (Count III). (ECF No. 1 at 8-11.) Plaintiffs' Motion seeks summary judgment on the first two claims. (ECF No. 29.) Plaintiffs contend that the Policy requires Underwriters to defend them and provide up to $2 million for defense expenses. (*See id.* at 6.) Defendants' Motion seeks summary judgment, contending that the Qui Tam Action falls outside of the Billing Errors Endorsement's coverage period or, if the Qui Tam Action falls within the Endorsement's coverage period, that coverage is limited to the sub-limit of $25,000 identified in the Billing Errors Endorsement. (ECF No. 26.)

## III.  LEGAL STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings,

---

[1] The Qui Tam Action is assigned to the undersigned. *See* case no. 2:14-cv-01786-MMD-GFW.

[2] Underwriters denied coverage under the professional liability portion of the Policy but agreed to make $25,000 available to Plaintiffs for Claims Expenses *and* Loss under the Billing Errors Endorsement (*see* ECF No. 1 at 8), subject to a reservation of rights to contest the applicability of the Endorsement to the qui tam action (*see* ECF No. 26 at 11).

3

the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285

F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

Further, "when parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits." *Fair Hous. Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 499 (Feb. 1992) (citations omitted). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

## IV. DISCUSSION

### A. Qui Tam Action Falls Within the Endorsement Period

As a preliminary matter, both parties concede that absent the Billing Errors Endorsement, coverage for the Qui Tam Action is not available under the professional liability insurance portion of the Policy. (*See* ECF No. 29 at 14; *see also* ECF No. 26 at 4.)[3] Before addressing the scope of coverage under the Billing Errors Endorsement, the Court will address the threshold question of whether the Quit Tam Action falls within the coverage period.

Defendant argues that because the Qui Tam Action was filed on October 28, 2014, it falls outside of the Billing Errors Endorsement's coverage period, which covers April 15, 2015, to April 16, 2016. (ECF No. 26 at 4.) More specifically, Underwriters point to section III.2. of the Billing Errors Endorsement, which states that coverage "does not apply to **Insured Events** which arise from any facts, circumstances, situations, events, transactions or causes of action which are underlying or alleged in litigation pending on or prior to the initial effective date." (ECF No. 26 at 16.) Defendant contends that section III.2. clearly provides that coverage under the Billing Errors Endorsement does not apply

///

---

[3] Plaintiffs' counsel conceded this point during oral argument.

to the Qui Tam Action because litigation is pending once it has been filed, regardless of when it was served on the insured. (*Id.* at 16-17 (relying on *HR Acquisition I Corp. v. Twin City Fire Ins. Co.*, 547 F.3d 1309, 1317-19 (11th Cir. 2008).)

The Court disagrees. Underwriters' position is tenuous given the unique procedural stature of qui tam lawsuits under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* Indeed, Underwriters acknowledge that the FCA contemplates that complaints will remain under seal for at least 60 days after being filed. (*See* ECF No. 26 at 17.) Yet, Defendant relies on various non-FCA cases in support of its position that if the Billing Errors Endorsement were to apply to the Qui Tam Action, then the Endorsement would have clearly stated that it applied to lawsuits that had been filed but not served. (*See id.* at 16-17.) The language of the Billing Errors Endorsement is clear that the Endorsement specifically applies to a "Billing Error Proceeding," which Defendant admits covers qui tam lawsuits. (*See* ECF No. 26 at 5, 16.) It would be superfluous for the Endorsement to explicitly state that the date of service is the date of notice for purposes of coverage as it is commonly understood that a qui tam suit under the FCA becomes active once the defendant has notice of the lawsuit and that notice most often occurs at the time of service.[4]

The Court therefore finds that the Qui Tam Action was served on Plaintiffs in June 2015 and falls within the endorsement period in the Billing Errors Endorsement.

## B.   Billing Errors Endorsement is Unambiguously Clear

An insurance policy "must be enforced according to its terms." *Farmers Ins. Exch. v. Neal*, 64 P.3d 472, 473 (Nev. 2003) (the court must "give plain and ordinary meaning to the terms" of the insurance policy "from the perspective of one not trained in law").[5]

---

[4] Qui tam suits under the FCA are often under seal for extended periods of time while the government investigates whether or not to intervene. *See* § 3730(b)(3). Notice may occur either when the complaint is unsealed and the defendant receives service of the summons, *see* § 3730(b)(2), or when the government uses its civil investigative authority to subpoena defendants, *see* § 3733.

[5] When a federal district court is sitting in diversity jurisdiction, the court must apply state law to substantive legal questions. *See Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003). The parties agree that Nevada law applies.

While Plaintiffs are correct that, in the insurance context, the courts broadly interpret clauses providing coverage to afford the greatest possible coverage, *Fed. Ins. Co. v. Am. Hardware Mut. Ins. Co.*, 184 P.3d 390, 392 (Nev. 2008), unambiguous provisions may not be rewritten by the court. *Farmers Ins. Exch.*, 64 P.3d at 473. Whether a contract is ambiguous is a matter of law. *See Anvui, LLC v G.L. Dragon, LLC*, 163 P.3d 405, 407 (Nev. 2007) ("construction of a contractual term is a question of law") (quotations omitted). A "Nevada court will not increase an obligation to the insured where such was intentionally and unambiguously limited by the parties." *Capitol Indemnity Corp. v. Wright*, 341 F.Supp.2d 1152, 1156 (D. Nev. 2004). Furthermore, an endorsement to an insurance policy supplements the policy and is not a separate contract. *See Fed. Ins. Co. v. Amer. Hardware Mut. Ins. Co.*, 184 P.3d 390 (Nev. 2008).

Plaintiffs concede that there is no coverage for the Qui Tam Action under the professional liability portion of the Policy and that coverage is available only because of the Billing Errors Endorsement. (*See* ECF No. 29 at 14.) However, Plaintiffs argue that the Billing Errors Endorsement is ambiguous on its face because it does not expressly disclaim a duty to defend. (*See id.* at 19.) And, because the Endorsement is silent as to the duty to defend, Plaintiffs argue that the Billing Errors Endorsement's $25,000 sub-limit applies only to indemnification *for Loss*. (*See id.* at 6-7.) They point to the first sentence of the second paragraph in the Endorsement to argue that the phrase "Claim Expenses which the Insured incurs" creates a separate obligation for Claim Expenses that is not subject to the sub-limit identified in the Endorsement. (*See id.* at 7.) Plaintiffs then look to the Claims Expenses Endorsement to argue that the $2 million Limit of Liability in the Policy applies to Claim Expenses in the Qui Tam Action. (*See id.*)

However, the Court must look first to the language of the Billing Errors Endorsement. The first paragraph in Section I states as follows:

> In consideration of the premium charged, it is hereby understood and agreed that a sub-limit of liability of $25,000 per occurrence and $25,000 in the aggregate, and subject to a $2,500 deductible, applies to any **Billing Error Proceeding** made against an **Insured** during the **Endorsement**

7

> **Period** below and is reported to Underwriters as soon as practicable (but not more than 30 days after expiration of the **Endorsement Period**).

(ECF No. 30-9 at 36 (emphasis in original).) The Qui Tam Action is a "Billing Error Proceeding," an interpretation which is not subject to dispute. Section I unambiguously provides that "a sub-limit of liability of $25,000 per occurrence and $25,000 in the aggregate, and subject to a $2,500 deductible, applies to any **Billing Error Proceeding**." (*Id.*) Clearly, this means what it says: "a sub-limit of liability of $25,000 . . . applies to any **Billing Error Proceeding**" — i.e., the Qui Tam Action. The Billing Errors Endorsement is unambiguous as to the scope of coverage for the Qui Tam Action.

The Court disagrees with Plaintiffs that the Billing Errors Endorsement is silent as to Underwriters' duty to defend. Section I of the Billing Errors Endorsement goes on to state that "Underwriters shall indemnify the **Insured** for **Loss** in excess of the deductible stated above which the **Insured** is obligated to pay and **Claims Expenses** which the **Insured** incurs." (*Id.* (emphasis in original).) This Endorsement does not differentiate between Damages and Claim Expenses in defining this sub-limit of liability. Section V.B. of the Policy defines Claim Expenses as "fees, costs and expenses resulting from the investigation, adjustment, *defense*, and appeal of a **Claim**, suit or proceeding arising in connection therewith…" (ECF No. 30-9 at 11) (emphasis added). Thus, "Claim Expenses" as used in the Billing Errors Endorsement incorporates expenses arising from the duty to defend under the Policy.

In sum, the Court finds that the Billing Errors Endorsement is unambiguous in providing both that there is a duty to defend and that the sub-limit of liability for that duty is $25,000. Accordingly, the Court must construe the Billing Errors Endorsement as written and reject Plaintiffs' proposed construction which involves an interwoven reading of the Policy, the Billing Errors Endorsement and the Claims Expenses Endorsement.

**V.   CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and

determines that they do not warrant discussion because they do not affect the outcome of the parties' Motions.

It is therefore ordered that Defendant's Motion for Summary Judgment (ECF No. 26) is denied in part and granted in part. It is denied with respect to Defendant's argument that the Qui Tam Action falls outside of the Billing Errors Endorsement's coverage period. It is granted with respect to Defendant's argument that coverage for the Qui Tam Action is available under the Billing Errors Endorsement up to the sub-limit of liability of $25,000.

It is further ordered that Plaintiffs' Motion for Partial Summary Judgment (ECF No. 29) is denied.

The parties are directed to confer on the effect this Order has on Plaintiffs' pending motion for leave to file the first amended complaint (ECF No. 45). Accordingly, Plaintiffs' motion for leave to file the first amended complaint (ECF No. 45) is denied without prejudice.

DATED THIS of 19th day of September 2016.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE