UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MY LEFT FOOT CHILDREN'S THERAPY, LLC; JOHN GOTTLIEB AND ANN MARIE GOTTLIEB,<br><br>Plaintiffs,<br>v.<br><br>CERTAIN UNDERWRITER'S AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. HAH15-0632,<br><br>Defendant. | Case No. 2:15-cv-01746-MMD-VCF<br><br>ORDER |

## I. SUMMARY

This is an insurance dispute related to coverage for Plaintiffs' defense in a qui tam action. Before the Court is Defendant Certain Underwriters at Lloyd's London Subscribing to Policy No. HAH15-0632's ("Underwriters" or "Defendant") motion to dismiss ("Motion") (ECF No. 105). The Court has reviewed Plaintiffs My Left Foot Children's Therapy, LLC ("MLF"); Jon Gottlieb; and Ann Marie Gottlieb's (collectively, "Plaintiffs") response (ECF No. 106) as well as Defendant's reply (ECF No. 107).[1]

For the following reasons, the Court denies Defendant's Motion except as to the portion of Plaintiffs' bad faith claim based on Defendant's conduct prior to June 1, 2018, which is dismissed.[2]

---

[1]The Court also has reviewed Plaintiffs' motion for leave to file newly issued authority (ECF No. 118) and Defendant's response (ECF No. 119). The Court denies Plaintiffs' motion as moot because the Court is aware of this authority.

[2]The Ninth Circuit Court of Appeals reversed this Court's earlier judgment as explained *infra* and issued its mandate on June 1, 2018. (ECF No. 76.)

## II. BACKGROUND

The following facts are taken from the First Amended Complaint ("FAC") (ECF No. 100) unless otherwise indicated.

Plaintiffs Jon Gottlieb and Ann Marie Gottlieb own MLF, a business that provides speech, physical, and occupational therapy services to children in the Las Vegas Valley. (*Id.* at 2.) Plaintiffs purchased an insurance policy ("Policy") from Defendant for the period April 15, 2015, through April 15, 2016. (*Id.*) The Policy limits Defendant's liability to $2 million per claim and $4 million in the aggregate and carries a $2,500 deductible. (*Id.*) An endorsement ("Billing Errors Endorsement") to the Policy indemnifies Plaintiffs up to $25,000 for losses related to qui tam suits alleging that Plaintiffs submitted false claims to government health benefit payers. (*Id.*) The Policy requires Defendant to defend Plaintiffs in connection with any qui tam suit, with defense limits of up to $2 million per claim and $4 million in the aggregate. (*Id.*)

During the Policy period, Plaintiffs were named as defendants in a qui tam suit, *Welch v. My Left Foot Children's Therapy, LLC*, No. 2:14-cv-01786-MMD-GWF ("Qui Tam Action"). (*Id.*) Plaintiffs timely notified Defendant about the Qui Tam Action, but Defendant extended only $25,000 of coverage. (*Id.*) Plaintiffs filed this action (ECF No. 1), and this Court eventually granted summary judgment in favor of Defendant, finding that the Billing Errors Endorsement limited Defendant's liability to $25,000 in connection with its duty to defend Plaintiffs in the Qui Tam Action. (ECF No. 52 at 8.) Plaintiffs appealed, and the Ninth Circuit reversed, finding that the Policy provided up to $2 million per claim to defend the Qui Tam Action. (ECF No. 71 at 3-4.)

Plaintiffs then filed the FAC asserting the following claims: (1) breach of contract; (2) violation of Unfair Claims Settlement Practices Act, NRS Ch. 686A; and (3) breach of the implied covenant of good faith and fair dealing. (ECF No. 100 at 6-10.) Plaintiffs seek to recover attorney's fees related to the Qui Tam Action; attorney's fees related to this action; lost profits; damages related to mental suffering and emotional distress; and punitive damages. (*Id.* at 10-11.)

### III. LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not shown—that the pleader is entitled to relief. *Id.* at 679. When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)).

**IV. DISCUSSION**

Defendant moves to dismiss each of Plaintiffs' claims as well as certain of the remedies Plaintiffs seek. (*See generally* ECF No. 105.) The Court addresses Plaintiffs' claims before turning to the remedies.

**A.  Breach of Contract Claim**

Plaintiffs allege that Defendant breached the Policy by failing to defend Plaintiffs in the Qui Tam Action and by failing to indemnify Plaintiffs for the fees and costs they incurred in connection with the Qui Tam Action. (ECF No. 100 at 6.) Defendant argues that Plaintiffs cannot state a claim for breach of contract when Defendant limited coverage for the Qui Tam Action in good faith based on a reasonable interpretation of the Policy. (*See* ECF No. 105 at 13.) Defendant also argues that Plaintiffs have not stated a claim based on Defendant's post-mandate conduct.[3] (ECF No. 107 at 10.) The Court finds that Plaintiffs have adequately stated a breach of contract claim.

"In Nevada, insurance policies [are] treated like other contracts, and thus, legal principles applicable to contracts generally are applicable to insurance policies." *Century Sur. Co. v. Andrew*, 432 P.3d 180, 183 (Nev. 2018). A plaintiff asserting a breach of contract claim under Nevada law must allege the following elements: (1) the formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages. *See Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987).

The Court finds that Plaintiffs have stated a claim for breach of contract based on Defendant's failures to defend Plaintiffs in the Qui Tam Action and to extend $2 million of coverage. Plaintiffs' allegations show that Defendant owed a duty to defend and failed to

///

---

[3]Defendant notes that the Billing Errors Endorsement does not itself establish a duty to defend but does not dispute that the Policy as a whole—as opposed to the Billing Errors Endorsement specifically—imposes a duty to defend. (*See* ECF No. 105 at 13 n.4; ECF No. 107 at 10; *see also* ECF No. 1 at 19 ("The Underwriters shall have the right and duty to defend, subject to the Limit of Liability, any Claim or Suit against the Insured arising out of a Professional Liability Act or General Liability Act to which this policy applies, even if any of the allegations of the Claim are groundless, false or fraudulent.").)

4

do so. (ECF No. 100 at 6.) Plaintiffs' allegations also show that Defendant was obligated to provide up to $2 million of coverage but failed to reimburse Plaintiffs for the fees they incurred. (*Id.*) The Court agrees with Plaintiffs that it is irrelevant whether Defendant's failures were based on a reasonable interpretation of the Policy taken in good faith. *Andrew v. Century Sur. Co.*, 134 F. Supp. 3d 1249, 1259 (D. Nev. 2015) ("Nevada law allows for recovery of all reasonably foreseeable consequential damages for a breach of contract, regardless of the good or bad faith of the breaching party."); *see also Century Sur. Co.*, 432 P.3d at 183 (noting without objection that the court in *Andrew,* 134 F. Supp. 3d 1249, found both breach of contract and an absence of bad faith). Defendant's argument regarding its post-mandate conduct is irrelevant—Plaintiff's claim is not premised on that conduct.

Accordingly, the Court denies Defendant's motion to dismiss as to Plaintiff's breach of contract claim.

### B. Claim for Violations of NRS § 686A.310

Plaintiffs allege that Defendant violated at least two provisions of Nevada's Unfair Claims Settlement Practices Act—NRS § 686A.310(1)(e) ("Subsection (e)") and NRS § 686A.310(1)(f) ("Subsection (f)"). (ECF No. 100 at 7-8.) Subsection (e) makes it an unfair practice for insurers to drag their feet in settling claims. *See* NRS § 686A.310(1)(e) (defining an unfair practice as "[f]ailing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear"). Subsection (f) makes it an unfair practice for insurers to compel insureds to litigate in order to recover the same amount they would have recovered if the insurer simply settled their claims. *See* NRS § 686A.310(1)(f) (defining unfair practice as "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered").

///

Defendant first argues that Plaintiffs have failed to state a claim under NRS § 686A.310 because Defendant's coverage position was reasonable. (ECF No. 105 at 15.) Plaintiffs respond that Subsections (e) and (f) apply regardless of whether the insurer acts in good faith. (ECF No. 106 at 16.) The Court agrees with Plaintiffs. While the reasonableness of Defendant's coverage position may constitute a defense to Plaintiffs' claim, it is not a basis for dismissal. In addition, Defendant cites no authority to support its contention that Plaintiffs cannot state a claim under NRS § 686A.310 simply because Defendant's coverage position was reasonable. (*See* ECF No. 105 at 15; ECF No. 107 at 10-11.) Defendant also argues that Plaintiffs' claims under NRS § 686A.310 are premature to the extent they are based on Defendant's failure to settle in the time since the Ninth Circuit issued its mandate. (*See* ECF No. 107 at 10-11 (arguing that Defendant should have a reasonable period of time to review MLF's defense invoices).) Again, Defendant's potential defense to Plaintiffs' claim is not a basis for dismissal. Accordingly, the Court rejects Defendant's first argument.

Defendant next argues that Plaintiffs have failed to state a claim because the FAC does not allege that an officer, director, or department head of the insurer knowingly permitted the unfair practice. (ECF No. 105 at 15.) Plaintiffs counter that the allegations permit such an inference. (ECF No. 106 at 16.) The Court agrees with Plaintiffs—the allegations that Defendant committed unfair claims practices "give[s] rise to the inference that [Defendant's] higher-ups committed these practices or directed lower-level employees to commit these practices." *Sanders v. Church Mut. Ins. Co.*, No. 2:12-CV-01392-LRH, 2013 WL 663022, at *3 (D. Nev. Feb. 21, 2013). Defendant argues that the decision in *Sanders* "contradict[s] the basic legal standard for a motion to dismiss," (ECF No. 107 at 11), but the Court disagrees. Inferential allegations may support a claim. *See Twombly*, 550 U.S. at 562. Accordingly, the Court rejects Defendant's second argument.

Defendant further argues that Plaintiffs have failed to state a claim for violation of Subsection (e) because liability did not become reasonably clear until the Ninth Circuit issued its mandate. (ECF No. 105 at 15.) Plaintiffs argue they have sufficiently alleged

that liability was clear when Defendant initially denied coverage, and that Defendant has continued to violate Subsection (e) since June 2018. (ECF No. 106 at 17.) The Court agrees with Plaintiffs—they have alleged that liability was reasonably clear at the time of the initial denial and also when liability became clear during the appeal. (*See* ECF No. 100 at 7 ("[D]espite the fact that the liability of Defendant in this case was clear . . . it refused to negotiate in good faith with Plaintiffs to resolve the claim in a way that was prompt and equitable.").) Accordingly, the Court rejects Defendant's third argument.

Defendant argues that the claim under Subsection (f) is premature because litigation is ongoing and MLF has not "ultimately recovered" under the Policy. (ECF No. 105 at 15.) Plaintiffs argue that the claim is not premature because Plaintiffs have already recovered more than $600,000 and expect to additionally recover over $1.7 million soon. (ECF No. 106 at 15.) Plaintiffs contend that these amounts are substantially more than the amount offered by Defendant at the outset of this litigation—$25,000. (*Id.*) The Court agrees with Plaintiffs and finds that Plaintiffs have stated a claim under Subsection (f). Defendant cites two cases in support of its position, but the plaintiffs in both cases had not recovered any amounts under their respective policies. *See Amini v. CSAA Gen. Ins. Co.*, No. 2:15-CV-0402-JAD-GWF, 2016 WL 6573949, at *6 (D. Nev. Nov. 4, 2016) ("But Amini has not 'ultimately recovered' any amount due under the policy, let alone an amount substantially more than the $110,000 offer he rejected . . . ."); *Heinaman v. Fid. & Guar. Life Ins. Co.*, No. 2:14-cv-01884-RFB-GWF, 2016 WL 1367743, at *7 (D. Nev. Apr. 5, 2016) ("Plaintiff has yet to receive payment from Defendant."). Here, Plaintiffs have already recovered significantly more than the amount offered by Defendant at the beginning of the litigation. Accordingly, the Court rejects Defendant's fourth argument.

Defendant also argues that Subsection (f) does not give rise to an independent cause of action because it amounts to a fee-shifting provision. (ECF No. 105 at 16.) Defendant relies on *Schmall v. Gov't Emps. Ins. Co.*, in which the court noted that "a claim that a plaintiff has been made to institute litigation under subsection (1)(f) appears to be a fee-shifting provision depending on the success of other underlying claims and is better

7

characterized as a remedy." 240 F. Supp. 3d 1093, 1098 (D. Nev. 2016). Defendant also relies on *Engel v. Hartford Ins. Co. of the Midwest*, in which the same judge found Subsection (f) "somewhat confusing" and a claim under that provision "redundant with the other claims." No. 2:11-CV-01103-RCJ-PAL, 2011 WL 6131566, at *3 (D. Nev. Dec. 7, 2011). Plaintiffs note that the court in *Schmall* preserved the remedy contained in Subsection (f) even though the claim was dismissed to the extent it was stated as an independent cause of action. (ECF No. 106 at 18.) The Court finds that Plaintiffs have stated a claim under Subsection (f) by alleging that Defendant lowballed their claim, forcing them to institute litigation to recover their defense costs, and by alleging that they have already recovered far more than Defendant initially offered. (*See* ECF No. 100 at 7.) The Court sees no reason to dismiss this claim simply because it might amount to a fee-shifting provision in practical terms. Accordingly, the Court rejects Defendant's fifth argument.

The Court thus denies Defendant's motion to dismiss Plaintiffs' claims under NRS § 686A.310.

### C. Bad Faith Claim

Defendant argues that Plaintiffs' bad faith claim must be dismissed because Plaintiffs have not sufficiently alleged that Defendant's conduct was deliberate and unreasonable. (ECF No. 105 at 10.) Plaintiffs point out that the following allegations show Defendant acted deliberately and unreasonably: (1) Defendant construed the Policy in the narrowest and most hyper-technical way possible even though liability was reasonably clear; (2) Defendant deliberately disregarded well-established principles of insurance policy interpretation; (3) Defendant gave no consideration to Plaintiffs' interests; (4) Defendant denied all coverage even after previously extending $25,000 of coverage; and (5) Defendant failed to reconsider its coverage position in light of new evidence and made no settlement offers to resolve the matter. (ECF No. 106 at 18.)

To show bad faith, a plaintiff must establish that the insurer "act[ed] unreasonably and with knowledge that there [was] no reasonable basis for its conduct." *Sierzega v. Country Preferred Ins. Co.*, 650 F. App'x 388, 389 (9th Cir. 2016) (alterations in original)

8

(quoting *Guar. Nat'l Ins. v. Potter*, 912 P.2d 267, 272 (Nev. 1996)). "Tactics such as an unreasonable failure to investigate and unreasonable delay can give rise to an inference of bad faith." *Id.* (first citing *Farmers Home Mut. Ins. v. Fiscus*, 725 P.2d 234, 235-36 (Nev. 1986); then citing *Potter*, 912 P.2d at 272).

This Court already held that Defendant's coverage position was at least reasonable (*see* ECF No. 52 at 7-8), and the Ninth Circuit's memorandum opinion did not reverse on this point (*see* ECF No. 71 at 2-4). Rather, the Ninth Circuit found the Policy provisions ambiguous and found that this Court erred by effectively resolving the ambiguity in favor of Defendant. (*Id.* at 3-4.) Given that Defendant had a reasonable basis for its coverage position, the Court will dismiss Plaintiffs' claim to the extent it is based on Defendant's failure to defend or provide coverage in the time before the Ninth Circuit issued its mandate in this case.

Plaintiffs argue that the Court should not consider its earlier erroneous opinion in determining whether Defendant's coverage position was reasonable, relying on non-binding authority. (ECF No. 106 at 20 (citing *Filippo Indus., Inc. v. Sun Ins. Co. of N.Y.*, 88 Cal. Rptr. 2d 881 (Cal. Ct. App. 1999), *as modified* (Oct. 20, 1999)). In *Filippo*, the court found that "the reasonableness of the insurer's decision must be evaluated as of the time it was made, and that no subsequent court ruling can be the justification for the decision." *Id.* at 888-89. But Defendant correctly notes that the court came to a different conclusion in *Morris v. Paul Revere Life Ins. Co.*, 135 Cal. Rptr. 2d 718 (Cal. Ct. App. 2003). In *Morris*, the court found that "the fact that a court had interpreted that law in the same manner as did the insurer, whether before or after, is certainly probative of the reasonableness, if not necessarily the ultimate correctness, of its position." *Id.* at 726. This Court finds that its prior decision as well as the Ninth Circuit's memorandum opinion necessarily imply that Defendant's coverage position was reasonable. None of Plaintiff's allegations would permit a reasonable juror to conclude otherwise.

Nevertheless, Plaintiffs also argue that Defendant has acted in bad faith in the time since the Ninth Circuit issued its mandate. (ECF No. 106 at 18-19.) Defendant details the

communications between the parties during the summer of 2018 in an effort to show that an alternative explanation for its delay in providing payments exists. (*See id.*) But accepting Plaintiff's allegations as true, a reasonable juror could infer bad faith on the part of Defendant from the mere delay in payment. *See Sierzega*, 650 F. App'x at 389. While Defendant's factual allegations give rise to an alternative explanation for its delay, this is not a basis for dismissal of Plaintiffs' claim.

Accordingly, the Court denies Defendant's Motion except as to the portion of Plaintiffs' bad faith claim based on Defendant's conduct prior to June 1, 2018. The remainder of Plaintiffs' bad faith claim—based on Defendant's conduct after the Ninth Circuit issued its mandate—will proceed.

### D. Punitive Damages

Defendant argues that Plaintiffs' request for punitive damages must be dismissed because Nevada law only allows for the award of punitive damages in tort actions—not actions based on breach of contract, including Plaintiffs' claims for violation of NRS § 686A.310. (ECF No. 105 at 16.) Plaintiffs concede they are not entitled to punitive damages based on their contract claim but argue that they are entitled to punitive damages on their claims for bad faith and violations of NRS § 686A.310. (ECF No. 106 at 26.) The Court agrees with Plaintiffs at least as to the availability of punitive damages on their bad faith claim. *See Potter*, 912 P.2d at 273 (affirming award of punitive damages on bad faith claim). The Court need not consider whether punitive damages are available with respect to Plaintiffs' claims under NRS § 686A.310 at this time. Accordingly, the Court rejects Defendant's argument for dismissing Plaintiffs' request for punitive damages.

### E. Breach of Contract Damages

Defendant argues that Plaintiffs' requests for attorneys' fees, lost profits, and damages related to emotional stress and suffering must be dismissed because they are not recoverable in a breach of contract action—none of these categories of damages are reasonably foreseeable or reasonably contemplated by the parties. (ECF No. 105 at 17.) The Court rejects this argument—at least as to Plaintiffs' requests for attorneys' fees and

lost profits—based on the Nevada Supreme Court's recent decision in *Century Surety Company*, in which the court found "that an insurer's liability where it breaches its contractual duty to defend" encompasses "any consequential damages caused by its breach" and may exceed "the policy limits plus the insured's defense costs." 432 P.3d at 182. The Court also rejects Defendant's argument for the additional reasons detailed below for each category of damages.

### 1. Attorneys' Fees

Under Nevada law, "[a] party can claim attorney fees as foreseeable damages arising from a breach of contract and such fees are considered special damages." *Tracey v. Am. Family Mut. Ins. Co.*, No. 2:09-cv-01257-GMN-PAL, 2010 WL 5477751, at *5 (D. Nev. Dec. 30, 2010). "They must be pleaded as special damages in the complaint . . . and proved by competent evidence just as any other element of damages." *Sandy Valley Assocs. v. Sky Ranch Estates Owners Ass'n*, 35 P.3d 964, 969 (Nev. 2001); *see also Del Webb Communities, Inc. v. Partington*, No. 2:08-cv-00571-RCJ-GWF, 2009 WL 3053709, at *20 (D. Nev. Sept. 18, 2009) (quoting *Shuette v. Beazer Homes Holdings Corp.*, 124 P.3d 530, 548 (Nev. 2005)) (noting that "the damages award rule articulated in *Sandy Valley Associates* is a 'narrow special damages exception' and that claimants to that exception 'generally have the arduous task of proving [attorneys' fees] were a natural and proximate consequence of the injurious conduct'"). Plaintiffs have pleaded that they are entitled to attorneys' fees as special damages in the FAC. (*See* ECF No. 100 at 6 ("Plaintiffs specially plead that they are entitled to collect attorneys' fees as special or consequential damages incurred by Plaintiffs were a natural and proximate consequence of Defendant's breach of the Policy.").) Accordingly, the Court finds that attorneys' fees are recoverable on Plaintiffs' breach of contract claim.

### 2. Lost Profits

Plaintiffs argue that they can recover lost profits on their breach of contract claim based on the Nevada Supreme Court's decision in *Hornwood v. Smith's Food King No. 1*, 772 P.2d 1284 (Nev. 1989). (ECF No. 106 at 24.) Defendant counters that *Hornwood* is

distinguishable because it involved a lease contract rather than an insurance contract. (ECF No. 107 at 14-15.) This difference is immaterial. *See Century Sur. Co.*, 432 P.3d at 183 ("In Nevada, insurance policies [are] treated like other contracts, and thus, legal principles applicable to contracts generally are applicable to insurance policies."). Defendant also argues that lost profits are not foreseeable based on a non-binding decision, *Cal. Shoppers, Inc. v. Royal Globe Ins. Co.*, 221 Cal. Rptr. 171 (Cal. Ct. App. 1985). (*See* ECF No. 107 at 15.) But the court in *California Shoppers* found that the plaintiff "offered no probative data . . . as to how its profits would have been generated." 221 Cal. Rptr. at 205. Plaintiffs may be able to offer such data here. At the motion to dismiss stage, Plaintiffs have adequately alleged that their lost profits were the natural and foreseeable consequence of Defendant's breach. (*See* ECF No. 100 at 10-11 ("As a result of Defendant's refusal to provide a defense of up to $2 million, Plaintiffs were required to expend money on their own defense in the [Qui Tam] Action and therefore could not carry out their plan to expand operations.").) Accordingly, the Court finds that lost profits are recoverable on Plaintiffs' breach of contract claim.

### 3.     **Emotional Distress Damages**

Emotional damages are not recoverable on Plaintiffs' breach of contract claim. *See Morgan v. Ocwen Loan Servicing, LLC*, No. 2:16-cv-02536-APG-PAL, 2018 WL 1796292, at *5 (D. Nev. Apr. 16, 2018) ("Damages for mental suffering and emotional distress are ordinarily not recoverable in an action for breach of contract unless the breach also caused bodily harm or where the express object of the contract is the mental and emotional well-being of one of the contracting parties."). But Plaintiffs argue that they can recover emotional distress damages at least on their claims for bad faith and violations of NRS § 686A.310. (ECF No. 106 at 25.) Defendant does not dispute this point. (*See* ECF No. 107 at 15 (only arguing that emotional stress and suffering damages cannot be award on a claim for breach of contract).) Accordingly, the Court will reject Defendant's argument for dismissing Plaintiffs' request for emotional distress damages.

///

### F. Attorneys' Fees Under NRS § 686A.310

Defendant also argues that Plaintiffs' request for attorneys' fees on its claims for violations of NRS § 686A.310 must be dismissed. (ECF No. 105 at 17-18.) The Court disagrees. NRS § 686A.310(2) expressly provides that "an insurer is liable to its insured for any damages sustained by the insured as a result of the commission of any" unfair practice, and Defendant argued in its own brief that Subsection (f) should be construed as a fee-shifting provision. (*See* ECF No. 105 at 16.) Accordingly, the Court rejects Defendant's argument for dismissing Plaintiffs' request for attorneys' fees in connection with its claims under NRS § 686A.310.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendant's motion to dismiss (ECF No. 105) is granted in part and denied in part. The Court denies Defendant's Motion except as to the portion of Plaintiffs' bad faith claim based on Defendant's conduct prior to June 1, 2018. This portion of Plaintiffs' bad faith claim is dismissed.

It is further ordered that Plaintiffs' motion for leave to file supplemental authority (ECF No. 118) is denied as moot.

DATED THIS 23rd day of April 2019.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE