UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MY LEFT FOOT CHILDREN'S THERAPY, LLC; JOHN GOTTLIEB AND ANN MARIE GOTTLIEB,<br><br>Plaintiffs,<br><br>v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. HAH15-0632,<br><br>Defendant. | Case No. 2:15-cv-01746-MMD-VCF<br><br>ORDER |

**I.     SUMMARY**

Plaintiffs My Left Foot Children's Therapy, LLC ("MLF"), John Gottleib, and Marie Gottleib are suing Defendant Certain Underwriters at Lloyd's London Subscribing to Policy No. HAH15-0632 to ensure insurance coverage for a *qui tam* action filed against Plaintiffs. Before the Court are Defendant's motions for partial summary judgment on Plaintiffs' claim under Nevada's Unfair Claims Settlement Act, Nev. Rev. Stat. § 686A.310, *et. seq.* ("NRS 686A.310") (ECF No. 151) and Plaintiff's request for consequential damages (ECF No. 152).[1] Because there is a material dispute of fact as to whether Nev. Rev. Stat. § 686A.270 ("NRS 686A.270") applies here, because Defendant relies on the incorrect standard for consequential damages, and as further discussed below, the Court will deny Defendant's motions.

///

---

[1]The Court has reviewed the parties' respective responses (ECF Nos. 162, 161) and replies (ECF Nos. 165, 164).

## II.     BACKGROUND[2]

Plaintiff MLF is a small business co-owned by Plaintiffs Jon Gottlieb and Ann Marie Gottlieb that provides speech, physical, and occupational therapy to children in Las Vegas. (ECF No. 100 at 2.)

In April 2015, Plaintiffs purchased a Professional Liability Insurance Policy (the "Policy") from Defendant for the period spanning April 15, 2015 through April 15, 2016. (*Id.*) Among other things, the Policy provides a limit of liability of $2 million per claim, $4 million in the aggregate, and a $2,500 deductible. (*Id.*) The Policy also provides a Billing Errors Endorsement that indemnifies Plaintiffs up to $25,000 for losses in connection with *qui tam* suits alleging Plaintiffs submitted false claims to government health benefit payers. (*Id.*)

On June 20, 2015, Plaintiffs received notice of a *qui tam* action filed against them in the District of Nevada—*Welch v. My Left Foot Children's Therapy, LLC,* Case No. 2:14-cv-01786-MMD-GWF ("Qui Tam Action")—alleging false claims to government health benefit payers. (*Id.*) On July 6, 2015, Plaintiffs timely filed a claim under the Policy. (*Id.*)

Defendant extended $25,000 of coverage as provided under the Policy's Billing Errors Endorsement. (*Id.*)

In September 2015, Plaintiffs filed this lawsuit. (ECF No. 1.) In September 2016, this Court ruled on cross-motions for summary judgment, and granted Defendant's motion, finding that the Billing Errors Endorsement limited Defendant's liability such that the Policy only provided coverage to Plaintiffs up to the $25,000 sublimit. (ECF No. 52 at 8.)

Plaintiffs appealed and the Ninth Circuit Court of Appeals reversed, finding the Policy provided up to $2 million per claim to defend the Qui Tam Action. (ECF No. 71 at 3-4.)

In August 2018, Plaintiffs filed their First Amended Complaint ("FAC"), alleging: (1) breach of contract; (2) violation of NRS 686A.310; and (3) breach of the implied covenant

---

[2]The following facts are undisputed unless otherwise noted.

2

of good faith and fair dealing. (ECF No. 100 at 6-10.) Plaintiffs sought to recover attorneys' fees related to the Qui Tam Action, attorneys' fees related to this action, lost profits, damages related to mental suffering and emotional distress, and punitive damages (*Id.* at 10-11.)

In September 2018, Defendants filed a motion to dismiss the FAC. (ECF No. 105.) In April 2019, the Court granted in part and denied in part Defendant's motion. (ECF No. 120.)

Defendant now moves for partial summary judgment on two claims.[3]

### III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser*

---

[3]The Court notes that Defendant filed two separate motions for partial summary judgment (ECF Nos. 151, 152) rather than one partial motion for summary judgment as advised by the local rules. *See* LR 7-2. The Court will nonetheless address both motions here.

3

*Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

**IV.   DISCUSSION**

The Court first addresses Defendant's motion as to Plaintiffs' NRS 686A.310 claim, and then addresses Defendant's motion as to Plaintiffs' request for consequential damages. As stated, the Court will deny both motions.

**A.   NRS 686A.310**

Defendant argues that it is entitled to summary judgment on Plaintiffs' NRS 686A.310 claims because Plaintiffs fail to make the requisite showing under NRS 686A.270. (ECF No. 151 at 6.) NRS 686A.310 lists a number of activities considered unfair practices in the context of insurance. In their FAC, Plaintiffs allege that Defendant violated subsection (e) and (f) (ECF No. 100 at 7), which prohibit the following:

> (e) Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear.
>
> (f) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds

4

have made claims for amounts reasonably similar to the amounts ultimately recovered.

Nev. Rev. Stat. § 686A.310 (e), (f). Under NRS 686A.270:

> no insurer shall be held guilty of having committed any of the acts prohibited by NRS. 686A.010 to 686.310, inclusive, by reason of the act of any agent, solicitor or employee not an officer, director or department head thereof, unless an officer, director or department head of the insurer has knowingly permitted such act or has had prior knowledge thereof.

Nev. Rev. Stat. § 686A.270.

Specifically, Defendant argues that Plaintiffs have failed to allege or identify any evidence that an officer, director, or department head was aware of the conduct at issue. (ECF No. 151 at 10.) To support this argument, Defendant proffers the Declaration of Paul Bailey, claims handler, who alleges that: (1) he was not, nor reported to, an officer, director, or department head; (2) he was only responsible for determining coverage in connection with the False Claims Action under the Policy's Billing Errors Endorsement; (3) the decision regarding the Policy's Billing Errors Endorsement was within his authority so he proceeded without consulting or reporting to an officer, director, or department head; and (4) he is not aware of anyone else reporting to or consulting individuals in senior management positions about these topics. (*Id.*; ECF No. 151-1 at 3.)

Plaintiffs' response is two-fold. First, Plaintiffs argue that NRS 686A.270 is not applicable in private civil suits. (ECF No. 162 at 13-19.) Next, Plaintiffs argue that even if NRS 686A.270 did apply, they have satisfied the requirement that an officer, director, or department head was aware of the pertinent conduct. (*Id.* at 14.) The Court agrees with Plaintiffs as to the second argument but addresses each in turn below.

### i. NRS 686A.270 in Private Civil Actions

NRS 686A.270 applies in private civil actions brought under NRS 686A.310, like this one. Plaintiffs' arguments to the contrary are unpersuasive.

Plaintiffs first argue that the term "held guilty" is not a "term often found in civil litigation between private parties" but rather actions "brought by the State bringing charges that may result in criminal liability."[4] (ECF No. 162 at 13-14.) To further explain the types of proceedings that the Nevada Legislature intended to cover under NRS 686A.270, Plaintiffs then refer to the statute's purpose and legislative history. (*Id.*) Specifically, Plaintiffs argue that NRS Chapter 686A initially established powers of the Insurance Commissioner and the State to bring charges against those who violate the rules as well as consequences for those violations. (*Id.*)[5] Thus, they argue, given the consequences of being "held guilty" under Chapter 686A, "it is not surprising that the Nevada Legislature passed NRS 686A.270 to provide a *mens rea* of 'knowing' intent before a finding of guilt." (*Id.*) But, Plaintiffs then walk a fine line and rely on legislative history to argue that the knowing requirement of NRS 686A.270 was *not* intended to apply to private causes of action added to NRS 686A.310 in 1987, because "the legislature could easily have amended NRS 686A.270 to apply to this new private cause of action, [but] it did not do so." (*Id.* at 16.) Finally, Plaintiffs argue that although federal district courts, including this Court, have applied NRS 686A.270 in civil suits, no court has analyzed the issue in depth because it has never been raised. (*Id.*)

In reply, Defendant points to this Court's prior decision in *Hackler v. State Farm Mut. Auto. Ins. Co.* 210 F. Supp. 3d 1250, 1255 (D. Nev. 2016) as well as other district court decisions[6] where NRS 686A.270 has been applied in a civil context to argue that

---

[4] Plaintiffs also refer to the colloquial meaning of the phrase "guilty" and to an old edition of Black's Law Dictionary, which defines "guilty" as "having committed a crime; responsibility for a crime" to support this proposition. (*Id.* (citing Black's Law Dictionary 321 (3d pocket ed. 2006).)

[5] Plaintiffs describe the potential consequences of being "held guilty" as "including criminal convictions and the revocation of an entity's license." (*Id.*)

[6] *See, e.g., Starr Indem. & Liab. Co. v. Young*, 379 F. Supp. 3d 1103, 1110-11 (D. Nev. Mar. 31, 2019); *Sin Ling Siu v. State Farm Mut. Auto Ins. Co.*, Case No. A-19-796207-C, 2019 WL 8060229 at *4 (D. Nev. Dec. 16, 2019); *McCall v. State Farm Mut. Auto. Ins. Co.*, Case No. 2:16-CV-01058-JAD-GWF, 2018 WL 3620486 at *4 (D. Nev. July 30, 2018); *Skinner v. Geico Casualty Ins. Co.*, Case No. 2:16-cv-00078-APG-NJK,

6

the Court must do the same here. (ECF No. 165 at 6-7.) Defendant additionally argues that Plaintiffs' "hyper-technical" argument is contrary to the actual definition[7] and use of the phrase "held guilty" by Nevada courts and legislators. (*Id.* at 7-8 (citing Nev. Rev. Stat. § 42.005; *Republic Ins. Co. v. Hires,* 810 P.2d 790, 792 (Nev. 1991); *Ainsworth v. Combined Ins. Co. of Am.,* 763 P.2d 673, 674 (Nev. 1988)).)

Although Defendant is correct that this Court previously applied NRS 686A.270 in a private civil suit,[8] the Court agrees with Plaintiffs that the issue was not explicitly raised there. Because the Court has never been asked to consider the issue as raised by Plaintiffs, it will do so now.

When interpreting a statute, "legislative intent 'is the controlling factor.' The starting point for determining legislative intent is the statute's plain meaning, thus, when a statute 'is clear on its face, a court can not go beyond the statute in determining legislative intent.'" *State v. Lucero*, 249 P.3d 1226, 1228 (Nev. 2011) (citations omitted). Courts must "avoid statutory interpretation that renders language meaningless or superfluous." *Hobbs v. State*, 251 P.3d 177, 179 (Nev. 2011). When the language is "clear and unambiguous, we enforce the statute as written." *Id.* "Only when the statute is ambiguous, meaning that it is subject to more than one reasonable interpretation, do we look beyond the language [of the statute] to consider its meaning in light of its spirit, subject matter, and public policy." *Id; see also Lucero,* 249 P.3d at 1228.

Taking a traditional statutory interpretation approach, the Court concludes, contrary to Plaintiffs' argument, that NRS 686A.270 applies to all "acts prohibited by NRS 686A.010 to 686A.310, inclusive"—civil and criminal—and does not plainly apply only to criminal suits or to exclude only private causes of action. The Court first looks at the plain

---

2018 WL 1075035 at *7 (D. Nev. Feb. 26, 2018)*; Yusko v. Horace Mann Servs. Corp.*, Case No 2:11-cv-00278- RLH-GWF, 2012 WL 458471 at * 4 (D. Nev. Feb. 10, 2012).

[7]Defendant cites to the most recent edition of Black's Law Dictionary which additionally defines guilty as "responsible for a civil wrong, such as a tort or breach of contract." Black's Law Dictionary (11th ed. 2019).

[8]*See Hackler*, 210 F. Supp. 3d at 1255.

meaning of the phrase "held guilty." The most recent addition of Black's Law Dictionary defines "guilty" as not only one responsible for a crime, but "responsible for a civil wrong, such as a tort or breach of contract." Black's Law Dictionary (11th ed. 2019).[9] More importantly, read in the context of the provision and chapter as a whole, the phrase "held guilty" applies in both criminal and civil contexts. For example, while some sections within the chapter refer to "guilt" in reference to criminal penalties,[10] Nev. Rev. Stat. § 686A.260 relating to the revocation or suspension of a license uses the phrase "found guilty" in the context of civil penalties.[11] NRS § 686A.260. Therefore, the Court finds that NRS 686A.270 plainly applies in both criminal and civil contexts.

Moreover, contrary to Plaintiffs' assertions (ECF No. 162 at 16), the Court finds that NRS 686A.270 as a whole plainly applies to *all* civil actions under NRS 686A.310, which includes civil private rights of action. NRS 686A.270 reads that "no insurer shall be held guilty of having committed *any of the acts* prohibited by NRS 686A.010 to *686A.310, inclusive*. . .unless an officer, director or department head of the insurer has knowingly permitted such act or has had prior knowledge thereof." NRS § 686A.270 (emphasis

---

[9] Again, the Court notes that Plaintiffs relied on an old edition of Black's Law Dictionary to argue that "guilty" refers only in a criminal context. (ECF No. 162 at 13-14.) The Court instead looks to the most recent edition.

[10] Nev. Rev. Stat. § 686A.070 (". . . is guilty of a gross misdemeanor."); Nev. Rev. Stat. § 686 A.140 (". . .is guilty of a misdemeanor."); Nev. Rev. Stat. § 686A.290 ("a person who violates this section is guilty of a category D felony…); Nev. Rev. Stat. § 686A.291 ("a person who commits insurance fraud is guilty of a category D felony . . ."); Nev. Rev. Stat. §§ 686A.292, 686A.295 (". . .a person who is convicted of, or who pleads guilty. . ."); Nev. Rev. Stat. § 686A.315 (". . . may be guilty of a criminal act punishable under state or federal law. . .")

[11] "The Commissioner may revoke or suspend the license of any person domiciled or resident in Nevada and licensed to transact insurance in Nevada as insurer, agent, broker or otherwise, upon a hearing and proof that such person, as the result of a hearing before the commissioner, director or superintendent of insurance or insurance department of another state, or in a judicial proceeding in another state, has been found to have violated the insurance laws of that state relating to unfair methods of competition or unfair or deceptive acts or practices in the conduct of the business of insurance, and as a result thereof either has had his or her license revoked or suspended in that state or has been *found guilty* of failing to comply with any order, decree or judgment issued pursuant to such hearing or judicial proceeding in that state." NRS § 686A.260 (emphasis added).

added). NRS 686A.310 explicitly includes private causes of actions: "In addition to any rights or remedies available to the Commissioner, an *insurer is liable to its insured* for any damages sustained by the insured as a result of the commission of any act set forth in subsection 1 as an unfair practice." NRS § 686A.310(a) (emphasis added). Thus, because NRS 686A.270 applies to "*any of the acts*" prohibited by NRS 686A.310, it plainly applies to civil private rights of action provided for under NRS 686A.310.

Based on a plain reading of NRS 686A.270, the Court finds it unambiguously applies to both criminal and civil matters, including private civil rights of action brought under NRS 686A.310. Thus, a review of legislative history is unnecessary. The motion is therefore not denied on these grounds and the Court now turns to Plaintiffs' second argument in response.

### ii. NRS 686A.270 as Applied

Next, Plaintiffs argue that even if NRS 686A.270 does apply, they have satisfied the requirements because the impermissible act was knowingly permitted by officers or directors within each of Defendant's claims-handling entities—Huntersure LLC ("Huntersure"), Mendes & Mount, and Chaucer Syndicates Limited ("Chaucer"). (ECF No. 162 at 14.)[12]

First, Plaintiffs argue that Huntersure—the managing general agent and entity responsible for selling, issuing, and handling all inquiries under the Policy—and Mendes & Mount—the law firm responsible for investigating claims, determining coverage, and communicating with insureds—are considered "insurers" under the statute and had requisite knowledge of the prohibited acts. (*Id.* at 19-20.) Next, Plaintiffs argue that officers or department heads of Chaucer, another claims handling entity or "insurer," knowingly permitted the unauthorized act as evidenced by an authority letter. (*Id.* at 20-21.) Specifically, Paul Bailey, the claims handler at Chaucer who approved the $25,000

---

[12]Plaintiffs specifically argue that the "officers, directors, or department heads referred to in NRS 686A.270 must refer to those of the entity or entities handling the insurance claim, not necessarily the entity that is financially responsible for the claim." (*Id.* at 19.)

offer, was not himself an officer, director, or department head, but approved the offer because "'it was within [the] authority' granted to him by his 'authority letter' . . . authored by Chaucer's *Chief Underwriting Officer,* and reviewed by the *Department Head* . . ." (*Id.* at 10.) Therefore, the offer letter is evidence that an officer or director at Chaucer had "prior knowledge thereof" or knowingly permitted Bailey to act in a manner prohibited by NRS 686A.310, thereby satisfying the requirements of NRS 686A.270. (*Id.* (citing to *McCall v. State Farm Mut. Auto. Ins. Co.*, Case No. 2:16-cv-01058-JAD-GWF, 2018 U.S. Dist. LEXIS 126616, at *10 (D. Nev. July 30, 2019)).)

Defendant replies that Plaintiffs have not met the standard under NRS 686A.270 because: 1) neither Huntersure nor Mendes & Mount are "insurers" under the statute; and 2) although Chaucer, is an "insurer" under the statute, Plaintiffs have failed to show that officers, directors, or department heads of Chaucer had the requisite knowledge. (ECF No. 165 at 9.)

The Court does not address the question of whether or not Huntersure or Mendes & Mount classify as "insurer[s]" under the statute because the Court finds that there is a genuine issue of a material fact as to whether officers or department heads at Chaucer had the knowledge required by NRS 686A.270. While Defendant proffers the Declaration of Bailey as evidence that no officer, director, or department head knowingly permitted approval of the claim, Plaintiffs introduce the authority letter authored by department heads or officers per Chaucer policy, explicitly granting Bailey authority to handle any claim less than $750,000 as evidence that an "officer, director, or department head . . . knowingly permitted such act or had prior knowledge thereof." (ECF No. 162 at 10.) Thus, even though Bailey himself was not an officer, director, or department head, the officers or directors who granted him claims handling authority via the letter arguably had the requisite "prior knowledge thereof" to satisfy the statute. Plaintiffs distinguish the facts here from those of *McCall v. State Farm Mut. Auto. Ins. Co.* where the court rejected the argument that because "claims adjusters were following procedures developed by State Farm's officers and department heads, management was effectively approving claims

10

mishandling" because there were "no policies, procedures or depositions from management to support her conjecture…[and] without evidence that State Farm's upper management knew of and permitted allegedly unfair practices, McCall cannot prove her claim." 2018 U.S. Dist. LEXIS 126616, at *10. In contrast, Plaintiffs here have provided evidence that Bailey was following policies and procedures implemented by Chaucer, thereby effectively approving the claims mishandling at issue. Specifically, they proffer Bailey's deposition addressing the authority letter,[13] the authority letter itself,[14] and the Chaucer Claims Procedure Manual outlining the authority letter procedure.[15] The Court finds that Plaintiffs have set forth enough facts and evidence to demonstrate a genuine issue of material fact. Viewing the evidence Plaintiffs offer in the light most favorable to them as the non-moving party, a rational trier of fact could reasonably find Plaintiffs have demonstrated knowledge required by NRS 686A.270. Thus, the Court finds this evidence

---

[13] At Bailey's deposition, Plaintiffs ask: "when you are talking about 'within my authority,' could you explain in a little more detail what you are referring to there?" (ECF No. 162-5 at 12.) Bailey responds: "authority to take actions up to a certain settlement or reserve authority level per my authority letter. At this point in time this was well reserved or—there was no reserve or settlement that took it above my authority in 2015, so I had—I was able to handle the claim without referral to senior management." (*Id.*)

[14] The letter dated January 3, 2012 is addressed to "Paul," and signed by Bruce Bartell, Chief Underwriting Officer. (ECF No. 162-12 at 2-3.) Under the first heading "Your Claims Authority" it reads: "Please note that this letter, which sets out the scope and limits of your claims authority, replaces all previous communications on this subject and applies with immediate effect. Your authority is restricted to those classes of business and areas of responsibility specified below and, where appropriate, is restricted by the financial limits and specific requirements/exclusions also stated." Under Settlement authority it reads: "You are required to refer any claim movement with an incurred value in excess of 750,000lbs or 1.125$ to someone with relevant authority." (*Id.*)

[15] The relevant section reads: "Each member of the Claims Department is issued with an individual letter of authority. The letter details their areas of responsibility, the classes of business and Syndicate numbers to which the authority applies, the financial limits of the authority and any specific requirements or exclusions. These letters are countersigned by the individuals and a copy retained for easy reference. Additional copies are kept on record with the Department Head and Compliance Department. The levels and terms of authority are set and reviewed periodically by the Department Head in conjunction with the Chief Underwriting Officer. As part of this process consideration is given to the experience, capabilities, progress and documented training of the individuals." (ECF No. 162-13 at 3-4.)

sufficient to withstand a motion for summary judgment and denies the Motion on those grounds.

### iii. Request for Reconsideration

Finally, the Court address Plaintiffs' request for reconsideration regarding its ruling entered April 23, 2019 (ECF No. 120) dismissing Plaintiffs' bad faith claim for Defendant's conduct during the pre-mandate period. (ECF No. 162 at 25.) Defendant responds that such a request is improper under the Federal and Local Rules because Plaintiffs have not filed a motion or articulated any factual or legal basis to support a motion. (ECF No. 165 at 13.) The Court agrees and will not consider Plaintiff's request for reconsideration.

## B. Consequential Damages

Next, Defendant moves for summary judgment as to damages[16] sought on Plaintiffs' good faith breach of the duty to defend claim.

Defendant argues that it cannot be held liable for damages based on the good faith breach of duty to defend claim because a "party to a contract cannot be held liable for consequential damages that are not foreseeable at the time the contract is executed." (ECF No. 152 at 11 (citing *In re Transact, Inc.*, Case No. SACV 13-1312-MWF, 2014 WL 3888230, at *22 (C.D. Cal. Aug. 6, 2014)).) Specifically, Defendant argues that the damages were not reasonably foreseeable because at the time the Policy was awarded, damages for good faith breaches of the duty to defend in Nevada were not normally awarded. (*Id.*) Defendant relies on *Andrew v. Century Sur. Co.*, Case No. 2:12-cv-00978-APG-PAL, 2014 WL 1764740 (D. Nev. 2014) ("*Andrew/2014*") as evidence that at the time the Policy was issued in April 2015, Nevada had not yet recognized consequential damages in breach of duty to defend cases without a finding of bad faith. (*Id.*) Rather, it was not until five months after the Policy was issued that Judge Gordon reconsidered

---

[16]Defendant initially refers to the damages in question as "extra-contractual consequential damages." (ECF No. 152 at 10.) Plaintiffs clarify that "extra-contractual" damages are not synonymous with "consequential damages" (ECF No. 161 at 18) and Defendant ultimately agrees stating that "the Parties agree the Damages at issue in Underwriters' Motion would be consequential damages" (ECF No. 164 at 6). Thus, the Court refers to the damages at issue as "consequential damages."

*Andrew/2014* in *Andrew v. Century Sur. Co.*, 134 F. Supp. 3d 1249, 1252 (D. Nev. 2015) ("*Andrew/2015*"), and not until 2018 that the Nevada Supreme Court formally issued a doctrine contrary to that articulated in *Andrew/2014*. (*Id.* at 13 (citing *Century Sur. Co. v. Andrew,* 432 P.3d 180 (Nev. 2018))).

Defendant argues in the alternative, that even if it is liable for damages based on the good faith breach of the duty to defend, it was not reasonably foreseeable that it would be held liable for damages *in excess* of the Policy limit. (*Id.*) Defendant again relies on *Andrews/2014* and subsequent *Andrews* decisions to support this argument. (*Id.* at 14.)[17]

But Defendant asserts the wrong test for consequential damages.[18] The test for consequential damages is not whether it was reasonably foreseeable that the party responsible for the harm would suffer liability; but rather, whether the injured party's harm was reasonably foreseeable at the time the contract was formed. As Plaintiffs argue, the term damages is a "stand-in for words such as harm, injury, loss, or detriment." (ECF No. 161 at 11.)[19] Moreover, in *Clark Cnty. Sch. Dist. v. Rolling Plains Const., Inc.,* 16 P.3d 1079, 1082 (Nev. 2001), the court opined that:

> …foreseeability requires that: (1) damages for loss must 'fairly and reasonably be considered [as] arising naturally...from such breach of contract itself,' and (2) the loss must be 'such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract as the probable result of the breach of it.'

(citations omitted). The court there concluded that "*the loss* was reasonably within 'the contemplation of both parties, at the time they made the contract.'" *Id.* (disapproved of on

---

[17]Defendant includes the Declaration of Carolyn Worster, underwriter and partner of Huntersure, as evidence that Defendants did not contemplate being held liable for damages "not covered by the Policy absent bad faith" or "in excess of the Policy limit absent bad faith." (ECF No. 152-1 at 3.)

[18]Although Defendant slightly modifies its argument in reply (ECF No. 164 at 10), ultimately conceding that loss/injury is part of the consequential damage analysis but not the only consideration, the Court finds the altered argument equally unpersuasive.

[19]Black's Dictionary defines damages as "money claimed by, or ordered to be paid to, a person as compensation for loss or injury." Black's Law Dictionary (11th ed. 2019).

other grounds) (emphasis added); *see also Mt. Charleston Invs. V. Co. V.,* Case No. A-15-715918-B, 2018 Nev. Dist. LEXIS 330, at *29-30 (Nev. Dist. Ct. Jan. 30, 2018) (holding plaintiff in a breach of contract case "is entitled to damages in an amount which will reasonably compensate an injured party for all the detriment, harm or loss naturally flowing from the breach and which was reasonably foreseeable as the probable result of the breach when the contract was made."). Additionally, the Nevada Pattern Jury Instructions define consequential damages as: "the amount that will reasonably compensate an injured party for all the detriment, harm or loss flowing from the breach and which is reasonably foreseeable . . . ." Nevada Pattern Jury Instructions Civil 13.45. Therefore, contrary to Defendant's argument, the test for consequential damages is whether the injured party's loss was reasonably foreseeable at the time of contracting.

The Court is similarly unpersuaded by Defendant's reliance on *Andrews/2014* and its progeny to argue that it could have not foreseen the type of liability at issue. This argument is premised on the mistaken belief that consequential damages are assessed based on the reasonable foreseeability of liability. Because the Court rejects this test, no further analysis is necessary. Defendant's test for consequential damages is incorrect and it has failed to demonstrate that damages, consequential or those in excess, are not reasonably foreseeable. As to the specific consequential damages being sought,[20] the Court agrees with Plaintiffs and finds that the reasonable foreseeability of damages is a factual question to be determined by a jury. The Motion is therefore denied.

///

///

///

///

///

---

[20] Plaintiffs detail each category of consequential damages being sought—settlement payment, legal expenses, diminution of Plaintiffs' value, and loss of payment towards a home—and outline how each will be proven. (ECF No. 161 at 8-10.)

## V.     CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendant's partial motion for summary judgment on Plaintiffs' Nevada's Unfair Claims Settlement Act claim (ECF No. 151) is denied.

It is further ordered that Defendant's partial motion for summary judgment on Plaintiffs' request for consequential damages (ECF No. 152) is denied.

DATED THIS 22nd Day of March 2021.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE